## LOREE v. ABNER et al.

### (Circuit Court of Appeals, Sixth Circuit. June 8, 1893.)

### No. 62.

1. EVIDENCE—JUDICIAL NOTICE—STATUTES OF STATES.
   The federal courts may properly take judicial notice of the statutes of the various states which were in force prior to the adoption of the constitution of the United States.

2. DEEDS—ACKNOWLEDGMENT—VIRGINIA STATUTE.
   Act Va. Oct. 1785, (12 Hen. St. 154,) required conveyances of lands made by persons not resident in Virginia to be acknowledged "before any court of law," and "certified by such court * * * in the manner such acts are usually authenticated by them." *Held*, that this acknowledgment before the "court" was a ministerial, rather than a judicial, act, and was not a matter to be entered of record, or even to be done by the court as such. It was sufficient if done before the persons constituting the court; but, where the court was composed of several members, the acknowledgment was invalid unless taken before a sufficient number to constitute the court.

3. SAME—CERTIFICATE OF PROTHONOTARY—PRESUMPTIONS.
   Where a Virginia deed bore a certificate of acknowledgment signed by two justices of a Pennsylvania court, accompanied by the certificate of a prothonotary that the signers of the first certificate were in fact such justices, and entitled to full credit as such, the fact that the prothonotary's certificate was under his seal as such was sufficient to raise a presumption that the certification was "in the manner such acts are usually authenticated by them," as required by the Virginia statute.

4. SAME—SUFFICIENCY OF ACKNOWLEDGMENT.
   By the laws of Pennsylvania in force in May, 1788, (1 Laws 1810, p. 142,) three justices were necessary to constitute the court of common pleas for the county of Philadelphia, and an acknowledgment of a Virginia deed under the said act of 1785, before two of them only, was invalid.

In Error to the Circuit Court of the United States for the District of Kentucky.

At Law. Action of ejectment by John Loree against William Abner and others. Judgment was given for defendants. Plaintiff brings error. Reversed.

Statement by BARR, District Judge:

This is an action of ejectment, in which plaintiff, Loree, sued for the recovery of a tract of land patented to Samuel Young by the commonwealth of Virginia on the 4th day of January, 1786, containing over 30,000 acres, lying in what are now the counties of Lee, Wolfe, and Powell, in the state of Kentucky.

The defendants answered, and put in issue plaintiff's title, and claim adverse possession, and pleaded the statute of limitation. Some of them deny that the deed from Young to Gitt, through whom plaintiff claims title, is valid, and allege that it was never executed by the patentee, Young, and the alleged deed to Gitt is fraudulent and void. On the trial, plaintiff read a copy of the patent to Samuel Young from the commonwealth of Virginia, dated January 4, 1786, and a copy of a deed from Samuel Young to W. W. Gitt, dated May 23, 1845, and then a deed from Gitt to plaintiff. This was plaintiff's chain of title, and, after he introduced testimony tending to prove that the defendants were in the possession of portions of the land sued for, he rested his case.

The defendants then read, with the permission of the court, and over the objections of the plaintiff, a certified copy of a deed from Samuel Young

to Charles Vancouver, dated March 9, 1786, which conveyed the same land patented to Young by the commonwealth of Virginia, January 4, 1786. This certified copy is in words as follows, viz.:

"This indenture, made the ninth day of March, in the year of our Lord one thousand seven hundred and eighty-six, between Samuel Young, of the city of Philadelphia, a merchant, of the one part, and Charles Vancouver, of the same city, gentleman, of the other part. Whereas, Patrick Henry, Esquire, by patent, under his hand and the lesser seal of the commonwealth of Virginia, bearing date the 4th day of January last past, did grant unto the said Samuel Young, his heirs and assigns, forever, a certain tract or parcel of land, containing thirty thousand nine hundred and seventy-three and one-third acres by survey, bearing date the 7th day of May, 1784, lying and being in the county of Fayette, in Kentucky; beginning at the letter 'A' in the plat, a black oak, standing at the end of four hundred and forty poles north, nine degrees west, line drawn from the mouth of the north fork of the three forks of the Kentucky river, and running thence north, nine degrees west, thirty-eight hundred and fifty poles, to letter 'B,' a hickory; thence north, eighty-one degrees east, thirteen hundred and seventy-five poles, to letter 'C,' a black oak; thence south, nine degrees east, three thousand poles, to letter 'D,' on Kentucky river, at a sugar tree, near the mouth of a large branch; thence running down, and binding with the meanders of the river, to letter 'E,' a buckeye, at the end of six hundred and forty poles when reduced to a straight line, where it intersects with an entry made by Adams and Crow; thence bounding by said entry, north, eighty-seven degrees west, two hundred and forty poles; thence south, four degrees east, seventy poles; thence south, eighty-six degrees west, one hundred and eighty poles; thence south, seventy-seven degrees west, four hundred poles; thence south, forty degrees west, one hundred and eighty poles, to the beginning, as by the said patent and recorded at Richmond fully appears: Now this indenture witnesseth that said Samuel Young, for and in consideration of the sum of one thousand three hundred and fifty pounds lawful money of Pennsylvania, to him in hand paid at the time of the execution thereof, the receipt whereof is hereby duly acknowledged, hath, and by these presents doth, grant, bargain, sell, alien, enfeoff, release, and confirm unto the said Charles Vancouver, his heirs and assigns, all that the above-described tract of land, together with all and singular the rights, privileges, immunities, hereditaments, and appurtenances whatsoever to the same belonging, and the reversions, remainders, rents, issues, and profits thereof, and all the estate, right, title, and interest whatsoever of the said Samuel Young of, unto, and out of the same. To have and to hold all and singular the hereby-granted premises, with the appurtenances, unto the said Charles Vancouver, his heirs and assigns, to his and their own proper use and benefit, forever, and the said Samuel Young, and his heirs, all and singular, the hereby-granted premises, with all the appurtenances, unto the said Charles Vancouver, his heirs and assigns, against himself and his heirs, and against all persons whatsoever lawfully claiming or to claim by, through, from, or under him or them, shall and will warrant and forever defend by these presents. In witness whereof, the said parties have hereunto set their hands and seals, interchangeably, the day and year first above written.

"Samuel Young. [L. S.]

"Sealed and delivered in presence of us:
"Miers Fisher.
"John Hallowell."

"I do hereby acknowledge to have received the full consideration money above mentioned.                                     Samuel Young.

"Witnesses:
"Miers Fisher.
"John Hallowell."

"Philadelphia county—ss.: Before us, the subscribers, two of the justices of the court of common pleas for the county of Philadelphia, personally came Samuel Young, in the above indenture named, and in due form of

law acknowledged the same as his act and deed. In witness whereof we have hereto set our hands and seals, the ninth day of March, in the year of our Lord one thousand seven hundred and eighty-six.

> "Plunket Fleeson. [L. S.]
> "Edward Shippen. [L. S.]"

"(L. C. S.) Philadelphia county—ss.: I, Jonathan Bayard Smith, Esquire, prothonotary of the court of common pleas of Philadelphia, do hereby certify that Plunket Fleeson and Edward Shippen, Esquires, the persons taking the foregoing acknowledgment, are, and at the time of taking and subscribing same were, justices of the court of common pleas for the said county, as by their commissions remaining of record in my office fully appear, and that, to all acts and deeds by them subscribed, full credit is and ought to be given. In witness whereof, I have hereunto affixed the common seal of the said court, and set my hand, the tenth day of March, in the year of our Lord one thousand seven hundred and eighty-six.

> "J. B. Smith."

"Philadelphia, in Pennsylvania—ss.: Before us, the subscribers, two of the justices of the court of common pleas for the county of Philadelphia, personally appeared Samuel Young, in the within written indenture named, and acknowledged that on the third day of May, in this present year, he had again sealed and delivered the within indenture as his act and deed, and now desires that the same may be recorded as such. Witness our hands and seals, the third day of May, one thousand seven hundred and eighty-eight.

> "John Gill.
> "William Pollard."

"I, Jonathan Bayard Smith, Esquire, prothonotary of the court of common pleas for the county of Philadelphia, do hereby certify that John Gill and William Pollard, Esquires, the persons taking the foregoing acknowledgment, are, and at the time of taking the same were, justices of the court of common pleas and of the peace for the same county, and that, to all acts by them done as such, full credit is and ought to be given. Witness my hand and seal, the sixth day of May, in the year of our Lord one thousand seven hundred and eighty-eight. J. B. Smith, Prot'y. [L. C. S.]"

"Recorded in the office for recording deeds, etc., for the city and county of Philadelphia, in Deed Book No. 16, pages 175, etc. Witness hand and seal of office, the 30th of March, A. D. 1786.

> "Mathw. Irwin, Rec'r. [L. C. S.]"

"The time for recording the within written indenture, according to the laws of Virginia, being expired, the same was again sealed and delivered by the said Samuel Young as and for his act and deed, this present third day of May, in the year of our Lord one thousand seven hundred and eighty-eight, in the presence of us, to the end that the same may be yet recorded there. Miers Fisher.

> "John Hallowell."

"At a court held for Bourbon county, at the courthouse, on Tuesday, the 18th day of November, one thousand seven hundred and eighty-eight, the above indenture of bargain and sale, from Samuel Young to Charles Vancouver, acknowledged before Plunk. Fleeson and Edward Shippen, Esquires, justices of the peace for Philadelphia county, in the state of Pennsylvania, and certified by Jonathan Bayard Smith, prothonotary of the said county, with the said county seal affixed thereto, was admitted and ordered to be recorded.

"Test: John Edwards, C. C. B. C."

"State of Kentucky, Bourbon county—Sct.: I, Wm. Myall, clerk of the Bourbon county court, Kentucky, certify that the foregoing is a true and complete copy of a deed from Samuel Young to Charles Vancouver, together with the certificates to same, as same appears of record in my office. Given under my hand, November 24th, 1891. Wm. Myall, C. B. C. C."

This deed being read, the court instructed the jury they must find for defendants. This was done, and judgment entered thereon, and the plaintiff has sued out a writ of error.

C. B. Simrall, O'Hara & Bryan, and T. M. Hinlke, for plaintiff in error.

Trabue & Trabue and St. John Boyle, (S. F. J. Trabue, E. F. Trabue, and Strother & Gordon, on the brief,) for defendants in error.

Before JACKSON, Circuit Judge, and SEVERENS and BARR, District Judges.

BARR, District Judge, (after stating the facts.) The errors assigned are that the court should not have allowed the certified copy of the deed from Samuel Young to Charles Vancouver to be read to the jury, and that it erred in instructing the jury to find for the defendants. If the certified copy of the deed from Young to Vancouver was competent evidence, the instruction of the court to find for the defendants was correct, as that conveyance proved the title was not in Samuel Young at the date of the deed to W. Gitt, through whom plaintiff claimed. Whether this certified copy was competent evidence depends upon the question of whether the original deed had been legally executed and acknowledged, so as to authorize its record in the Bourbon county court under the laws of Virginia. This land lay in Bourbon county, and the county court of that county had authority to order it to record if it had been executed and acknowledged according to the statutes of Virginia. The Virginia statute of October, 1748, prescribed the mode of conveying land where the interest was a life estate or more than a life interest. The statute was similar to the one enacted October, 1710. See 3 Hen. St. p. 517.

By these statutes, nonresidents of the colony of Virginia were required to have their deeds recorded in the records of the general court, or the county court of the county where the land, or part of it, lay, within two years after the sealing and delivery thereof; and it was provided, as to these deeds, they should not—

"Be admitted to record in the general court, or in any county court, unless the same be acknowledged in such court by the grantor or grantors thereof in person, or by some or one of them, to be his, her, or their proper act and deed, or else that proof thereof be made in open court, by the oath of three witnesses at the least." 5 Hen. St. p. 409.

These statutes which required nonresidents of the colony to acknowledge their deeds in person before the general court or the county court of the county where the land lay, or else prove their execution in one of said courts by three witnesses, were found to be inconvenient and difficult, and in October, 1776, the then commonwealth of Virginia changed this by statute. This statute, after reciting the difficulty and inconvenience of requiring nonresidents of the state to acknowledge deeds in person, or prove them by witnesses in the general court or the county court of the state,

provided that such deeds should be acknowledged by the party or parties making same, or should be proven by three witnesses—

"Before the mayor or other chief magistrate of the city, town, or corporation wherein or near to which he, she, or they shall reside; and such acknowledgment or proof, certified by the mayor or other chief magistrate, under the common seal of said city, town, or corporation, annexed to the deed, shall be admitted to record in the general court or the county court where the lands or other estate lie, and shall be effectual for passing the estate therein mentioned, as if the conveyance had been acknowledged or proven in such court; or when the parties making such deeds shall reside in any of the states of America, and there shall happen to be no city or town corporate within the county wherein they shall dwell, a certificate, under the hands and seals of two justices or magistrates of the county, that such proof or acknowledgment hath been made before them, together with a certificate from the governor, under the seal of the state, or from the clerk of the county court, under the common seal of the county, that the persons certifying such proof or acknowledgment are justices or magistrates within the same, shall authorize the recording of such deeds, and make them effectual as aforesaid." 9 Hen. St. p. 207.

In October, 1785, another statute was passed by Virginia, regulating conveyances, in which it was enacted:

"That no estate of inheritance or freehold, or for a term of more than five years, in lands or tenements, shall be conveyed from one to another unless the conveyance be declared by writing, sealed and delivered, nor shall such conveyance be good against a purchaser, for valuable consideration, not having notice thereof, or any creditor, unless the same writing be acknowledged by the party or parties who shall have sealed and delivered it, or be proved by three witnesses to be his, her, or their act, before the general court or before the court of that county, city, or corporation in which the land conveyed, or some part thereof, lieth, or in the manner hereinafter directed."

The manner thereinafter directed was this, viz.:

"If the party who shall sign and seal any such writing reside not in Virginia, the acknowledgment by such party, or the proof by the number of witnesses requisite, of the sealing and delivering of the writing, before any court of law, or the mayor or other chief magistrate of any city, town, or corporation of the county in which the party shall dwell, certified by such court or mayor or chief magistrate, in the manner such acts are usually authenticated by them, and offered to the proper court to be recorded within eighteen months after the sealing and delivering, shall be as effectual as if it had been in the last-mentioned court." 12 Hen. St. p. 154.

This act, by its terms, did not take effect until January 1, 1787, so that the acknowledgment before Judges Fleeson and Shippen was under the act of 1776, and the acknowledgment before Judges Gill and Pollard was under the act of 1785. The latter act repealed the former so far as it related to conveyances of real estate. Hynes v. Campbell, 6 T. B. Mon. 286. This deed was not offered before the county court of Bourbon county for record within the required two years, and hence the first acknowledgment need not be considered, as we assume that the county court of Bourbon did not act judicially in admitting this deed to record.

The questions to be determined in this view are, did Judges Gill and Pollard constitute a court of law, within the meaning of the act of 1785, and is the certificate of Prothonotary Smith in the form and manner such acts are usually authenticated? This certificate of Jonathan Bayard Smith, prothonotary of the court of

common pleas for the county of Philadelphia, is sufficient as to the fact that Judges Gill and Pollard were justices of said court, and that all acts done by them as justices were entitled to full credit; and this certificate, being under seal of Smith as prothonotary, must, we think, raise the presumption that the authentication is in the usual manner of such authentication. Ewing's Heirs v. Savary, 3 Bibb, 237. But he did not certify that these two justices constituted this court of common pleas, or that they would be a quorum to hold such a court. We do not think it necessary that these justices should have taken this acknowledgment in open court, or as a court at all, but it is sufficient that they should have constituted a court of law. It cannot be assumed that Virginia intended the courts of the several states of the Confederation who might take acknowledgments of deeds to lands in Virginia, or hear proof thereof, would enter such proceedings in the records of these courts, and have them authenticated as judgments or other like proceedings would have been authenticated. Bank v. Portman, 9 Dana, 112. These acknowledgments were ministerial acts, rather than judicial ones, and, being done under the statute of another state, could not properly be entered upon the records of the common pleas court of Philadelphia.

In view of the provisions of the act of 1776 which authorized, in certain cases, these acknowledgments, or the proof thereof, to be taken before two justices or magistrates of the county, and the provision of this act (1785) which authorized the mayor and other like officers to take such acknowledgments and proof, we conclude "any court of law" in this act means any person or persons who at the time constituted a court of law in the state where the grantor resided. This was intended to designate the person or persons who constituted a court of law, and authorize him or them to take such acknowledgments or proof, but not to require a court of law, as a court, to take such acknowledgments and proof.

As there is no evidence offered by the defendants other than the copy of this deed and the certificates thereon, the trial court must have taken judicial notice of the laws of Pennsylvania, and decided those laws made this court of common pleas a court of law, and constituted two justices a court.

The states of Virginia and Pennsylvania were then part of the United States of the Confederation. Our present Union was not perfected until July 21, 1788, by the ratification of the requisite nine states. Pennsylvania was one of the nine, having ratified the constitution December 12, 1787, but Virginia did not ratify it until July 25, 1788. Although this government and the courts thereunder were first established under the present constitution, which was ratified and became effectual in July, 1788, we think the court was correct in taking judicial knowledge of the laws of Pennsylvania in May, 1788. The federal courts take judicial knowledge of the laws of the several states of the Union, (Church v. Hubbart, 2 Cranch, 187; Hanley v. Donoghue, 116 U. S. 1, 6 Sup. Ct. Rep. 242,) and have taken judicial notice of the laws of Mexico in force in

territory acquired afterwards by the republic of Texas, and then by the United States, (U. S. v. Perot, 98 U. S. 430,) and also of the laws of California existing before that territory was acquired by the United States, (Fremont v. U. S., 17 How. 557.)

We find that there was a court styled the "County Court of Common Pleas" established by the colony of Pennsylvania in and for the county of Philadelphia as early as May 22, 1722, and that it was given common-law jurisdiction, but that law required three or more of the justices to constitute the court. See 1 Laws Pa. 1810, p. 142. There was no change in the number of justices necessary to constitute this court of common pleas until after the adoption of the constitution of 1790 by Pennsylvania. That constitution provided for the appointment of not fewer than three, nor more than four, justices, including a presiding justice, who should compose courts of common pleas, and in some instances two of said justices were allowed to constitute a court; but, as this was after the acknowledgment of this deed by Young, it cannot aid his acknowledgment. It is likely the mistake in thus taking the acknowledgment before two justices was because the parties were not aware of the repeal of the act of 1776 by the act of 1785.

As this deed had not been acknowledged by Samuel Young before those authorized by the act of 1785 to receive such acknowledgment, it was not legally recordable by the county court of Bourbon; hence a copy thereof was incompetent evidence, and it was error to allow it to be read.

For this error the case must be reversed, and a new trial granted, and proceedings had in conformity with this opinion; and it is so ordered.